UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06CR134  CDP |
| | ) | |
| LAWAN JAMES, | ) | |
| DENNIS DINWIDDIE, and | ) | |
| MICHAEL D. MEADOR, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motions to suppress filed by

defendants Lawan James, Dennis Dinwiddie and Michael Meador.  Defendants are

charged with conspiracy to distribute marijuana, interstate travel in aid of

racketeering, and possessing a firearm in furtherance of a drug trafficking crime

resulting in the murder of Sergio Burgos.  Dinwiddie and James are also charged

with being felons in possession of firearms.

Sergio Burgos's body was discovered in Mississippi County, Missouri, on

April 22, 2006.  He had been shot three times.  Law enforcement officers

developed evidence leading them to believe that Burgos had been involved in drug

transactions, including a marijuana transaction with defendant Michael Meador.

They learned that Burgos had been killed at Meador's grandmother's house in

New Madrid, Missouri. The government's theory presented in the evidentiary hearings[1] was that Burgos, Meador and defendant Dennis Dinwiddie had been involved in drug transactions in the past, and Burgos owed Dinwiddie money from an earlier drug deal. After Burgos and defendant Raul Cruz delivered marijuana to Meador at his grandmother's house, Meador called Dinwiddie in Tennessee and told him Burgos was in Missouri. Dinwiddie and defendant Lawan James then drove to Missouri. Dinwiddie shot Burgos two times and James shot him once. Cruz was also shot, but was not seriously injured. Meador was present when the murder took place, provided one of the weapons, and cleaned up the murder scene after the other defendants removed the body.

I referred the motions to United States Magistrate Judge David D. Noce under 28 U.S.C. § 636(b). Judge Noce held several evidentiary hearings and filed separate Reports and Recommendations as to each defendant. Defendants have objected to Judge Noce's recommendations.

I have conducted *de novo* review of all matters relevant to the motions. I have reviewed all the transcripts, have read all of the motions, briefs, and objections, and have reviewed the documentary evidence and listened to and

---

[1]Defendants contest all of these facts; I set them out here for context, recognizing, of course, that these are merely the government's contentions and that defendants are presumed innocent unless the government meets its burden of proof at trial.

watched the recorded evidence.  In large part, I am adopting the thorough reasoning of Judge Noce as set forth in support of his recommended rulings.  I will here set out my conclusions, but I need not do so in the level of detail that Judge Noce provided, as I agree with most of his factual findings and legal conclusions. There are a few areas where I have reached different conclusions from those of Judge Noce, or have reached the same conclusion for different reasons, and those are set out in this order.

## Michael D. Meador Motions

Michael D. Meador seeks suppression of the following evidence:

1.      Statements Meador made during his first interview on April 27, 2006 at the Ste. Genevieve Sheriff's office (videotaped in part).

2.      Gun seized from Meador outside his home on April 27, 2006.

3.      Statements Meador made during his second interview on April 27, 2006 at the Ste. Genevieve Sheriff's office (videotaped).

4.      Cash and billfold seized in booking process on April 27, 2006.

5.      Hotel card key seized during April 27, 2006 search of Meador's residence in Ste. Genevieve, Missouri.

6.      Items seized during April 28, 2006 search of Ford Explorer.

7.      Statements Meador made on April 28, 2006 at New Madrid County

Sheriff's office (audio recorded).

8.　　Data retrieved from cell phone on May 1, 2006.

7.　　Statements Meador made to James Lundry in June of 2006 while in New Madrid County Jail (audio recorded in part).

Discussion

Meador's Statements on April 27 and 28

Meador was interviewed by law enforcement officers three times – twice on April 27 and once on April 28. Most, but not all, of the statements were either video or audio recorded. The evidence shows without question that these statements were voluntary and were not the result of any coercion or police overbearing of Meador's will. Additionally, Meador was repeatedly provided warnings of his rights to remain silent and to counsel. He signed three different written waivers of *Miranda* rights, and at one point commented on the fact that he had already done so in an earlier conversation. He himself initiated the April 28 conversation, by having his mother call law enforcement officers and tell them that he wanted to talk to them, and he explicitly and knowingly waived his right to have counsel present at that interview.

Defendant argues that he repeatedly invoked his right to remain silent, but the evidence does not support the argument. The recordings reveal that Meador

generally controlled the conversations, giving extremely long statements, often with very little prompting by the questioning officers. Frequently when they asked a question he not only answered the question he had been asked, but provided a great deal of additional information. Many times he simply ignored the question being asked and explained something else. It is true that at times Meador refused to answer specific questions, or stated that he would talk about some things but not about others, but the recordings show that these were his attempts to control the conversation, not an invocation of the privilege against self-incrimination. Several times, especially in the second interview, he stated that he had told everything he knew and said that the conversation was over, but then he immediately continued talking without further interrogation by the questioning officer.

I do agree with Meador, however, that he unambiguously invoked his right to remain silent at the end of the second interview on April 27. After a long argumentative portion of the conversation, he said, "Then there ain't no use in us talking, let's get it done, hurry it up." At that point the officer said he would go get the warrant and stood up to leave the room. Meador continued making statements even after this, and the officer told him at least twice to stop talking, but he did not. None of this should be suppressed, because these last statements

were not made in response to any interrogation. When the officer returned to the room, however, he began asking questions. This questioning was improper, and violated the defendant's fifth amendment privilege against self-incrimination, and so I will suppress the portion of the statement that occurred when the officer returned to the room with the warrant.

The evidence shows that, except for this small portion of the statements, Meador's statements were voluntary and made after a knowing waiver of his rights, and all the interrogation was proper.

<u>Physical Items</u>

When police officers approached Meador outside his home on the afternoon of April 27, he told them he had a gun and took it out of his waistband. They seized it, and there is no question that this seizure was lawful. Carrying a concealed weapon is a felony in Missouri, the officers already had a warrant for Meador's arrest for murder, and interests of safety certainly justified the seizure. None of Meador's constitutional rights were implicated by this seizure. Similarly, when Meador was booked on the warrant his personal items were taken, including cash and a wallet, and there is no basis for suppressing these items.

When police executed the search warrant for the residence Meador shared with his parents, the only item of evidentiary value they seized was a hotel card

key from a hotel in Edinburg, Texas, which is where Sergio Burgos lived. Meador challenges the warrant itself as lacking probable cause, and also argues that the card key was not within the scope of the warrant. The warrant authorized the search of Meador's residence for "firearms, ammunition, casings, bloody clothing, blood stains, marijuana, controlled substances, drug paraphernalia, customer lists, phone records and bills, computers, hard drives, and data stored thereon."

The affidavit supporting the warrant application contains more than sufficient evidence showing probable cause to believe these items would be found at the residence. It detailed the fact of the murder, summarized Meador's statements, including his admissions to being present at the scene of the murder, to cleaning up the murder scene, and to marijuana trafficking, and it provided information received from other witnesses.

Meador argues that the card key should be suppressed because it was not included in the list of items to be seized. Judge Noce correctly concluded that the officers were justified in seizing the card key. They discovered it during a search that was within the scope authorized by the warrant and its evidentiary value was immediately apparent, as it bore an address in Edinburg, Texas, which is the town where the murder victim lived. The officers found an item of obvious evidentiary significance while executing a valid search warrant, and their seizure of it was not

a violation of the Fourth Amendment.

Officers seized fast food receipts, marijuana, a cell phone, notes, and an unknown substance from a Ford Explorer that they searched on April 28, 2006. They did not have a warrant to search the vehicle, which was owned by Meador's step-father. Virginia Cates, Meador's mother, signed a written consent to search the vehicle. The officers reasonably believed that Mrs. Cates had authority to consent to the search, and so the search was valid. Additionally, her consent allowed the officers to search the containers in the car, so none of the physical items seized will be suppressed.

Data from Cell Phone

On May 1, several days after the cell phone was seized from the Ford, officers retrieved data from the phone, including information from the phone's call logs and address book. They had previously obtained phone company records related to the phone. Meador had told officers that it was his phone, and that he had used it to call Burgos about the marijuana transaction. Meador argues that the warrantless search of the data stored on the phone violated the Fourth Amendment.

Judge Noce concluded that the police knew by then that Meador's mother did not have the authority to consent to the search of the phone. He found that the

search was valid, however, under the automobile exception to the warrant requirement, because the police had probable cause to believe that evidence of a crime would be found in data stored in the cell phone. I agree with this conclusion.

Judge Noce correctly concluded that Meador had a reasonable expectation of privacy in the data contained in the cell phone. Meador had a possessory interest in the cell phone and it is reasonable for a person to expect the information contained in a cell phone – especially information such as that contained in the address book, which is not available even to the service provider – will be "free from intrusion from both the government and the general public." *United States v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007). As one court has noted, "cell phones are capable of storing immense amounts of highly personal information." *United States v. Park*, 2007 WL 1521573 (N. D. Cal. May 23, 2007). Because of this reasonable expectation of privacy, law enforcement officers must obtain a search warrant before viewing the contents of a cell phone, unless one of the exceptions to the warrant requirement exist.

Judge Noce also correctly concluded that the automobile exception to the warrant requirement, as recognized in *Chambers v. Maroney*, 399 U.S. 42 (1970) and refined in *California v. Acevedo*, 500 U.S. 565 (1991) applies here. Because

probable cause existed to believe that evidence of a crime would be found in the cell phone call records and address book, the automobile exception allows the search of the cell phone just as it allows a search of other closed containers found in vehicles. I agree with Judge Noce's conclusion, and note that at least one district court has recently reached the same conclusion under very similar facts. *See United States v. Fierros-Alvarez*, 2008 WL 1826188 (D. Kan. April 23, 2008) (automobile exception justified search of cell phone found in vehicle).[2]

Jail Conversations with James Lundy

In June of 2006, while he was incarcerated at the New Madrid County Jail, Meador had a series of conversations with fellow inmate James Lundy. Lundy reported the initial conversations to his lawyer. He later met with law enforcement officers, who provided him with recording devices and directed him to question Meador about Meador's alleged desire to have two individuals, Scott Pepper and Gary Grimm, killed. According to the government's evidence, Meador had given some or all of the marijuana obtained from Burgos to Pepper, and Pepper still owed Meador $40,000. Supposedly Grimm might have some of the money

---

[2]Judge Noce pointed out that some courts have recognized that the closed-container analogy breaks down when applied to laptop computers, *see United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999), and I agree that is a much more problematic case. But that is not the issue before me.

Meador was owed. Lundy said that Meador was seeking Lundy's help to have Pepper and Grimm killed in order to collect the debt.

Meador argues that his statements to Lundy were obtained in violation of his Fifth and Sixth Amendment rights. I agree with the government that because there is no indication that Meador at any time knew Lundy was acting on behalf of the government, the Fifth Amendment is not implicated. Additionally, the Sixth Amendment was not implicated by the initial conversations, which happened before Lundy ever met with law enforcement officers. He was not working for the government in any capacity when he had those first conversations with Meador, so any statements Meador made were not obtained in violation of Meador's Sixth Amendment right to counsel.

The Sixth Amendment analysis is more complicated as to the later conversations. As an initial matter, I find there has been no waiver of this argument by counsel's failure to raise it in the initial pretrial motions, so I will consider it on the merits.

At the time of the Lundy conversations, Meador's Sixth Amendment right to counsel as to the Burgos matter had attached. The government could not question him about that matter without his counsel being present. No Sixth Amendment right to counsel had arisen with respect to the alleged plot to kill Pepper and

Grimm, however, as the right is offense specific and does not extend to uncharged crimes that may be factually related. *See Texas v. Cobb*, 532 U.S. 162 (2001). When Sgt. Heath of the Highway Patrol met with Lundy, he properly instructed Lundy to question Meador only about the Pepper/Grimm matter. Heath told Lundy not to talk to Meador about the Burgos homicide, and to steer the conversation back to Pepper and Grimm if Meador started talking about the murder. To the extent Lundy did not follow this directive and instead discussed the Burgos situation with Meador in the later conversations, Meador's statements will be suppressed.

I have listened to the full recordings of both conversations, and there are several instances where Meador discusses the Burgos matter, at least tangentially. I cannot say that Lundy always "steered" the conversation away or that in every instance he did not elicit the statement. The vast majority of the conversation is on other topics, however, and there is no basis to suppress most of the statements.

The government has not indicated what portions of the conversations it intends to introduce at trial or for what purpose. In this ruling I am not determining whether the evidence is relevant or admissible. I am only considering whether it was obtained in violation of Meador's constitutional rights, and it appears that – with perhaps only a few exceptions – there was no violation.

Because the recordings are so long and so difficult to understand, however, I will allow defendant to re-raise suppression arguments as to these statements once the government has informed us of its intention to introduce a specific statement.

### Lawan James Motions

Lawan James seeks suppression of the following items of evidence:

1.      Identification testimony of Raul Cruz, including his identification of James from a photo array on May 11, 2006.

2.      Statements James made on May 14, 2006 at New Albany, Indiana Police Department (videotaped in part).

3.      Cell phone seized from search of James' car on May 14 and electronic data retrieved from phone the same day.

4.      Items seized during search of James' residence in New Albany, Indiana, on May 14, 2006.

5.      Statements James made on May 16, 2006 during drive from Indiana to Missouri and gun later retrieved based on his statements.

6.      Statements James made on May 17, 2006 at New Madrid County Sheriff's Department (videotaped).

<u>Discussion</u>

<u>Identification by Cruz</u>

Judge Noce correctly concluded that there is no evidence that the out-of-court identification made by Raul Cruz was unduly suggestive. The people in the photo array appear reasonably similar to one another, and no suggestions were made to Cruz about who he should pick out. Additionally, the identification was reliable, when all the factors set out in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) and *Manson v. Brathwite*, 432 U.S. 98, 114-15 (1977) are considered. There is no basis for suppressing this evidence. As with all identification testimony, of course, James will have the opportunity to cross-examine and the jury will be allowed to assess the reliability of the identification testimony. *See Watkins v. Sowders*, 449 U.S. 341, 347-48 (1981); *United States v. Schultz*, 698 F.2d 365, 368 (8th Cir. 1983).

<u>James' Statements</u>

Judge Noce correctly concluded that none of James' statements should be suppressed. The government has presented substantial evidence showing that James was repeatedly given *Miranda* warnings, that he repeatedly waived his right to remain silent and to have counsel present during questioning, and that all of his statements were voluntary. There is no evidence of coercion or any improper

interrogation. The two portions of his statements that were videorecorded show that James was not being coerced in any way. He appears calm and cooperative throughout both interviews, and the government's evidence establishes that the non-recorded interviews were conducted in similar manner.

Physical Items

The Indiana search warrant executed at James' residence in the early morning hours of May 14 authorized a search for "any evidence concerning a homicide, firearms, cell phones, credit card receipts, any receipts that may have been used in the trip from Missouri to New Albany, Indiana, blood, trace evidence, clothing, footwear." When law enforcement officers executed the warrant they seized a wallet, a variety of documents, a computer flash drive, and a wig. I agree with Judge Noce and the government that the affidavit supporting the warrant showed that there was probable cause to believe that items of evidence would be found at the residence, that the warrant was sufficiently particular, and that there was no impropriety in the execution of the warrant.

The affidavit established that an arrest warrant charging James with the Burgos murder had been issued, that cell phone records from other suspects in the murder showed calls made to a phone issued to Carrie Smith or Carrie James, and that evidence showed Lawan James had used that phone around the time of the

murder. The affidavit stated that James was seen in the vicinity of the murder around the time the body was found. It also established that a vehicle registered to Carrie Smith had been driven to the apartment that night and that the people in the vehicle entered the apartment. This information ties together the murder, Lawan James, the Carrie Smith or Carrie James car and phone, and the residence. Defendant's argument that there is no "nexus" between the crime and the place to be searched is refuted by the evidence.

Similarly, defendant's argument that the Indiana police were required to show the Indiana judge that they had independently corroborated the information provided to them by the Missouri Highway Patrol misinterprets the law. The information was not obtained form a confidential informant, and no further corroboration was required. Similarly, I agree with Judge Noce that the warrant was sufficiently specific as to the items to be seized, and none of those items should be suppressed.

Finally, there is no basis for suppression of the gun that was located based on James's statement to the police. As discussed above, James knowingly and voluntarily waived his rights to remain silent and to counsel, and he knowingly and voluntarily showed the law enforcement officers where he had thrown the gun from the car.

<u>Data from Cell Phone</u>

James validly consented, orally and in writing, to a search of his car. He told the police officers they would find the cell phone in the car. The written consent form authorized the search of the car, "including its contents and the contents of the trunk." The cell phone was found in the console of the car. As with the other defendants' cell phones in this case, the police lawfully seized the cell phone, they had probable cause to believe that it would contain evidence related to the murder, and the only question is whether they could lawfully review its contents without obtaining a warrant. In James' case, the officer recovered the log of incoming and outgoing calls and the address book. Judge Noce concluded that this was a valid consent search, in that James' consent to search the car extended to the contents of the cell phone. He also concluded that exigent circumstances justified the warrantless search.

I agree with Judge Noce that the consent James gave to search his car covered the search of the cell phone. James' consent was given voluntarily, and it explicitly included consent to search the contents of the car. James specifically told the officers that his cell phone would be found in the car. *See also United States v. Vaneenwyk*, 206 F. Supp. 2d 423, 425 (W. D. N. Y. 2002) (day planner is analogous to closed container); *United States v. Galante*, 1995 WL 507249 (S.D.

N.Y. Aug. 25, 1995) (cell phone is analogous to closed container so was covered by consent to search). The search is also justified by the automobile exception, the same as in Meador's case.[3] I will therefore deny the motion to suppress this evidence.

## Dennis Dinwiddie Motions

Dennis Dinwiddie seeks suppression of the following items of evidence:

1.     Evidence relating to a January 27, 2006 encounter, including: a Federal Express packing slip seized from Dinwiddie's pocket, testimony regarding money found during a search of his car, and statements he made that day.

2.     Identification testimony of Michael Jeremy Hunt, including his identification of Dinwiddie from a photo array on April 27, 2006.

3.     Identification testimony of Billy Meador, including his identification of Dinwiddie from a photo array on April 27, 2006.

_____

[3]I disagree with Judge Noce's conclusion that exigent circumstances justified this search. There is no evidence that a cell phone's *address book* would be altered by incoming calls, and I am not convinced by the government's evidence that even the call logs are in danger of being destroyed by incoming calls. The service provider keeps records of the incoming and outgoing calls (police actually had these records before they seized Meador's phone), and so the fact that they might not all be stored on the phone itself does not mean they will be lost forever. To the extent that the government has cited cases holding otherwise, I disagree with the conclusions of those courts. *See*. *United States v. Young*, 2006 WL 1302667, at * 12-13 (N. D. W. Va. May 9, 2006) (exigent circumstances justified search because text messages and numbers stored in memory could be deleted by incoming calls); *United States v. Zamora*, 2006 WL 418390 (N. D. Ga. Feb. 21, 2006) (same); *United States v. Parada*, 289 F. Supp. 2d 1291 (D. Kan. 2003) (same).

4.       Items seized under two Tennessee search warrants on April 27, 2006.

5.       Statements Dinwiddie made after his arrest on April 28, 2006.

6.       Data retrieved from cell phone on April 28, 2006.

7.       Identification testimony of Raul Cruz, including his identification of Dinwiddie from a photo array on May 11, 2006.

## Discussion

### Evidence from January 27, 2006

In January of 2006 (three months before the Burgos murder), police in Clarksville, Tennessee intercepted a Federal Express package containing more than 50 pounds of marijuana. They conducted a controlled delivery of the package to the address for which it was intended, which turned out to be the residence of Dinwiddie's sister. While the marijuana was in the apartment, Dinwiddie appeared, entered the apartment, and then left carrying a piece of paper, which police believed was a Federal Express shipping receipt. He left the area but then later returned to the parking lot, where police stopped him.

The evidence presented before Judge Noce showed that Dinwiddie consented to a search of both his person and his car. The police seized a Federal Express packing slip from his pocket. They found $10,000 cash in a shoe box in the car, although they did not seize the cash. Dinwiddie argues that his consent

was limited to allowing a search for drugs or guns, but I disagree. Judge Noce correctly concluded that this was a consensual encounter, and that a reasonable person in Dinwiddie's position would have understood that he was consenting to a search of his pockets. Dinwiddie was not then in custody, and his consent to search both his person and his car was voluntary and was not limited in any way.

After they seized the packing slip, officers directed Dinwiddie to enter the apartment, where they questioned him, and he agreed to place a telephone call to the person he said was the source of the marijuana – Sergio Burgos. The officers advised Dinwiddie of his *Miranda* rights before they began questioning him inside the apartment. Judge Noce concluded that this encounter was no longer entirely consensual, but concluded that the detention was justified because of the ongoing execution of the search warrant. Thus, Judge Noce concluded, Dinwiddie's statements should not be suppressed.

I agree with Judge Noce's conclusions that none of the statements made on January 26 should be suppressed. My rationale is slightly different from his: I believe the officers had probable cause to arrest Dinwiddie for the crime of marijuana trafficking once they found him in possession of the marijuana packing slip and found $10,000 in his car. *Cf. United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994). At the very least, they had reasonable suspicion to believe he was

involved in criminal activity and so were entitled to detain him under *Terry v. Ohio*, 392 U.S. 1 (1968). Dinwiddie's constitutional rights were not violated by any of the police conduct that took place in this January encounter.

Identification Testimony

Three different witnesses picked Dinwiddie out of a photo array. There is no evidence that any of these out-of-court identifications were made under circumstances that were unduly suggestive. The people in the photo array appear reasonably similar to one another, and no suggestions were made to the witnesses about who they should pick out. There is also no evidence to show that the identifications were not reliable, and as with the James identification testimony discussed above, the jury will be able to assess the credibility of the witnesses and the reliability of the identifications at trial.

Statements of April 28, 2006

A Missouri judge issued a warrant for Dinwiddie's arrest on April 27. Dinwiddie was arrested in Clarksville, Tennessee, during either the early morning hours of April 28 or slightly before midnight on April 27. He was given Miranda warnings and began answering questions, but after a very short time invoked his right to counsel and all interrogation ceased. There is no basis to suppress any statements he made before he invoked his right to counsel.

<u>Physical Items</u>

A Tennessee judge issued three search warrants on April 27 for various locations associated with Dinwiddie in Clarksville.  Dinwiddie seeks to suppress the items of physical evidence seized from two of those locations – his residence and his business.  The affidavits supporting the warrants provide probable cause to believe that evidence of a crime would be found at the locations.  I agree with Judge Noce that the warrants were sufficiently particular as to the items to be seized and that the items seized were encompassed by the warrant.  There is no basis to suppress the physical items seized from Dinwiddie's business and home.

<u>Data from Cell Phone</u>

When Dinwiddie was arrested his wallet and cell phone were seized.  After he had invoked his right not to talk to police, one of the investigating officers reviewed the cell phone's lists of received and dialed calls and the address book.  This occurred approximately thirty to forty-five minutes after Dinwiddie's arrest.  Judge Noce concluded that the search of the cell phone was covered by the search warrants, as each search warrant included authorization to search "the person or premises of Dennis Dinwiddie," and each included in the items to be seized a long list of documents and records, "whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks

programmable instruments such as telephones, voice mail, answering machines, electronic address books, calculators, or any other storage media, . . ."

I agree with Judge Noce's conclusion that the search of the contents of Dinwiddie's cell phone was allowed by the search warrants. In Dinwiddie's case, unlike that of the other two defendants, the police did, in fact, have a warrant allowing them to search the data on the cell phone. As discussed above, a Tennessee judge had issued three search warrants. Each of those warrants authorized the search of a location, but each also authorized the search of "the *person* . . . of Dennis Dinwiddie" and each authorized a search for, among many other things, "records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on *memory storage devices* such as optical disks programmable instruments such as *telephones, voice mail, answering machines, electronic address books, calculators, or any other storage media . . .*" (emphasis added).

The warrants authorized the police to search Dinwiddie and further authorized them to search any of the items listed, which specifically include telephones and electronic address books. Dinwiddie is correct that there is no evidence that police told him that they were searching him pursuant to the search warrants, and they did not include the cell phone on their search warrant returns,

but this does not mean the cell phone contents must be suppressed. Dinwiddie's right against unreasonable searches and seizures means that police may not search the contents of his cell phone without a neutral and detached magistrate having first determined that there was probable cause to believe evidence of a crime would be found on the cell phone. That had happened in this case. The judge had authorized the search warrant before Dinwiddie was arrested and before the cell phone was searched, so Dinwiddie's Fourth Amendment rights were not violated by the search.[4]

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the United States Magistrate Judge as to Michael Meador [#335] is **SUSTAINED, ADOPTED, and INCORPORATED** herein, except to the limited extent set out above.

---

[4]I do not adopt Judge Noce's conclusion that the search of the cell phone was also justified as a search incident to arrest. I recognize that the majority of cases considering this issue have concluded, as Judge Noce did, that similar warrantless searches are proper. *See, e.g., United States v. Finley*, 477 F.3d 250, 259-60 (5th Cir. 2007); *United States v. Deans*, 2008 WL 880195 (D. Minn. March 28, 2008); *United States v. Curry*, 2008 WL 219966 (D. Me. Jan. 23, 2008); *United States v. Mercado-Nava*, 486 F.Supp.2d 1271 (D. Kan. 2007); *United States v. Brookes*, 2006 WL 1940124 (D. V. I. June 16, 2006); *United States v. Cote*, 2005 WL 1323343 (N. D. Ill. May 26, 2005). I believe, however, that the analysis in *United States v. Park*, 2007 WL 1521573 (N. D. Cal. May 23, 2007) and *United States v. LaSalle*, 2007 WL 1390820 (D. Haw. May 9, 2007) is more consistent with the Fourth Amendment. I need not decide this issue, however, because the search here was covered by a valid search warrant.

**IT IS FURTHER ORDERED** that Michael Meador's motions to suppress evidence and statements [# 225, 298] are denied, except to the extent set out above.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge as to Lawan James [#354] is **SUSTAINED, ADOPTED, and INCORPORATED** herein, except to the limited extent set out above.

**IT IS FURTHER ORDERED** that Lawan James' motions to suppress identification, evidence and statements [# 227, 228] are denied.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge as to Dennis Dinwiddie [#347] is **SUSTAINED, ADOPTED, and INCORPORATED** herein, except to the limited extent set out above.

**IT IS FURTHER ORDERED** that Dennis Dinwiddie's motions to suppress identifications, evidence and statements [# 223, 224, 231, 245, 259] are denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of April, 2008.